BAK-A-LUM CORPORATION OF AMERICA, A NEW JERSEY CORPORATION, PLAINTIFF, v. ALSCO, INC., A CORPORATION OF THE STATE OF DELAWARE AND DULY AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND WISCO, INCORPORATED, A CORPORATION OF THE STATE OF MICHIGAN, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided July 21, 1961.

590

*Mr. Robert Diamond* appeared for plaintiff.

*Mr. Irwin B. Schector* appeared for defendant Alsco, Inc.

HERBERT, J. S. C. The plaintiff has applied for an interlocutory injunction against alleged violations of its agreement to distribute Alsco products in fourteen counties of New Jersey. Answering affidavits have been filed for the defendant Alsco, Inc. No papers have been filed and no appearances entered for the other defendant, Wisco, Incorporated, a Michigan corporation.

In addition to the complaint, its supporting affidavits and the affidavits for Alsco, I have been furnished with a copy of the complaint filed in the Law Division, Passaic County, on June 20, 1961, by Alsco, Inc. against Bak-A-Lum Corporation of America (the present plaintiff), a copy of a notice of motion returnable on July 13th in the Law Division to consolidate this action with the one brought by Alsco, Inc., as plaintiff, and photostatic copies of pages 7 and 8 of an S.E.C. registration statement of Alsco, Inc., giving, among other things, information about the parent-subsidiary relationship between Alsco, Inc. and Wisco, Incorporated.

Attached to the complaint of Bak-A-Lum is a copy of the agreement dated February 5, 1958 between that company and Alsco, Inc. Paragraph 1 of that agreement reads in part as follows:

"The Manufacturer [Alsco, Inc.] hereby appoints the Distributor [Bak-A-Lum Corporation of America] as its sole and exclusive distributor of its baked enamel finish aluminum siding and accessories thereto and of its other siding products and accessories thereto, which are now manufactured, sold or distributed by the Manufacturer or which may hereafter be manufactured, sold or distributed by the Manufacturer, in the following territory only * * *."

The territory is described by using the names of fourteen counties.

There are also in the agreement provisions that terms of payment by the plaintiff "shall be 45 days net delivered * * *," that the plaintiff will obtain from the defendant Alsco, Inc. all its requirements of aluminum siding and accessories, that the term of the distributorship shall run from February 5, 1958 to February 28, 1978, and that if the plaintiff fails to order and take at least $125,000 of Alsco's products in any fiscal year either party may terminate the agreement by giving notice to do so within thirty days after the year's end. Another provision which Alsco cites as important for present purposes is found in paragraph 8. There it is stipulated that if the plaintiff's rights as distributor are infringed upon, Alsco will, upon notice from the plaintiff of the infringement, take appropriate steps to protect the plaintiff; and if Alsco fails to do so, then the plaintiff may take and prosecute at Alsco's expense such action as is necessary.

The affidavit of William Diamond, the plaintiff's president, lists specific instances of sales or attempted sales of Alsco products contrary to the agreement that the plaintiff was to be exclusive distributor. In five of these instances Alsco products were involved under the name Wisco. Reliance Home Improvement Company of North Arlington, Bergen

County (in the plaintiff's territory) is identified as the source, or at least a principal source, in retail channels of these so-called "Wisco" products. In several cases the "Wisco" label was merely pasted over the "Alsco" label on packages delivered to the job sites where the siding was being installed.

With considerable particularity the affidavits of Murray Gilbert and Nat M. Naroden, filed by the plaintiff, corroborate and elaborate upon what Mr. Diamond's affidavit charges about the sale of siding in the plaintiff's exclusive territory under the name "Wisco."

■ These "Wisco" transactions are not denied, except insofar as they are covered by a general denial of contract violations. Mr. Green, Sales Manager of the Clifton, New Jersey division of Alsco has made an affidavit in which he says, in paragraph 7:

"The affidavits refer to a certain company known and named therein as Wisco Company, 205 Ridge Road, North Arlington, New Jersey, which said company is also designated as Reliance Roofing Company, and contend that this company has been used by Alsco, Inc. as a subterfuge to sell Alsco products in the State of New Jersey, contrary to the agreement. This is untrue since the above mentioned company is not directly connected with Alsco, Inc. and does not purchase any of its products directly from Alsco, Inc. but arranges to purchase them from a Michigan corporation known as Wisco. I do not have any direct control over the sales of the Wisco company or Reliance Roofing Company at 205 Ridge Road, North Arlington, New Jersey, since they are an independent company."

Mr. Green may have no "direct" personal control over the sales of the Wisco Company, but what about his employer? The excerpt from the S. E. C. registration statement of the defendant Alsco, Inc. (Green's employer) which has been submitted as part of the proofs shows that Alsco in January, 1958 made an agreement with Wisco Aluminum Corporation by which Alsco, through a newly organized and wholly-owned subsidiary of its own named Wisco Incorporated took over the sales of "Wisco" and "Adco" products. There is

no proof before me that the situation described in the registration statement has changed, and I find that the defendant Alsco, Inc. does control and is responsible for the sale of Wisco products and that those products are within the scope of the agreement of February 5, 1958 which gives the plaintiff the sole and exclusive distributorship for aluminum siding and accessories "which are now manufactured, sold or distributed  *  *  *  or which may hereafter be manufactured, sold or distributed by the Manufacturer."

To hold otherwise would be to allow every manufacturer to organize wholly-owned subsidiaries, paste on a few new labels or otherwise give a different name to his products, and invade at will the territory previously given on an exclusive basis to a distributor.   On the proofs it appears clear that Alsco's so-called "Wisco" siding is in direct competition with the Alsco products the plaintiff has been licensed to distribute and that Reliance Home Improvement Company (sometimes referred to as Reliance Roofing Co.) as an outlet of "Wisco" products is in direct competition with the plaintiff in the plaintiff's territory.   This competition violates the protection which the defendant Alsco agreed to give the plaintiff.   There is authority for the proposition that a corporation is not excused from responsibility because it acts through a controlled subsidiary.   *Ross v. Pennsylvania R. R.,* 106 *N. J. L.* 536, 539 (*E. & A.* 1930) ; *Stockton v. Central R. R.,* 50 *N. J. Eq.* 52, 73 (*Ch.* 1892) ; *United States v. Reading Co.,* 253 *U. S.* 26, 40 *S. Ct.* 425, 64 *L. Ed.* 760 (1920).   For a list of New Jersey cases see *Newark Ladder & Bracket Sales Co. v. Furniture Workers,* 125 *N. J. Eq.* 99, 102 (*Ch. Div.* 1939).   See also 1 *A. L. R.* 610, 612, and 34 *A. L. R.* 597, 599;  I *Fletcher Cyclopedia Corporations,* 75 *et seq.* (*Rev. ed.* 1931) ; *Ballantine, Corporations, p.* 312 *et seq.* (1946).

In addition to the "Wisco" violations charged in the affidavit of Mr. Robert Diamond, the manager for Sears Roebuck & Co. at Red Bank (in the plaintiff's territory) is named as authority for the factual statement that the stores

of that company at Red Bank and Asbury Park are selling Alsco siding bought from the Alsco warehouse at Philadelphia. Also, an attempt by Alsco, Inc. to sell its siding to Superior Roofing Company, Saddle Brook, Bergen County is described by Mr. Diamond as well as a sale of Alsco siding to H. & S. Concrete Steps Co. of Sterling, Passaic County (in the plaintiff's territory) by the Clifton warehouse of Alsco, but with the billing being done from New York. Some additional transactions in violation of the distributorship agreement are described in the affidavits of Messrs. Gilbert and Naroden.

The affidavits presented by the defendant Alsco, Inc. make these points: (a) The plaintiff is behind in its payments for goods delivered and $96,411.93 is overdue from it to the defendant Alsco, Inc.; (b) Paragraph 8 of the agreement gives the plaintiff a remedy against competing sales in its territory and this remedy has not been used; (c) Alsco, Inc. is ready to comply with the terms of its contract if the plaintiff will pay up its account; (d) No control over the Wisco Company (as noted above); (e) "Many" competing sales described in the affidavits for the plaintiff were sales to "new home builders" made with the permission and consent of the plaintiff, and (f) Denials in general terms that Alsco, Inc. has violated the agreement.

There is no merit in the claim that paragraph 8 of the agreement furnishes a remedy which the plaintiff must follow. It is certainly not an exclusive remedy and it can hardly be considered a remedy at all when the invader of the plaintiff's territory is Alsco, Inc., the very party to which the plaintiff would complain under paragraph 8.

At the oral argument there was a claim for the plaintiff that the liability of Alsco to it exceeded any amount due from it to Alsco. If this be regarded, however, as a situation in which the Distributor has an overdue account with the Manufacturer, and is being sued at law on that account, it nevertheless does not automatically follow that the agreement between them is terminated, or that all of its other

provisions are suspended until the financial delinquency is cured. The applicable principle was stated in *Schlegel v. Boll*, 93 *N. J. Eq.* 607, at *p.* 610 (*E. & A.* 1922):

"* * * The whole agreement does not become absolutely void for failure of performance of a particular provision in it. It is merely voidable at the option of the party for whose benefit it has been inserted. If he desires to exercise that right and annul the contract, he must manifest his intention to do so by some act done or notice given within a reasonable time after the failure occurs; and, in the absence of such manifestation, he is to be presumed to have elected to consider the contract in force. *Grigg v. Landis*, 21 *N. J. Eq.* 494, and cases cited."

Also see *Neustadter v. United Exposition Service Co.*, 14 *N. J. Super.* 484, 492 (*Ch. Div.* 1951).

■ Except that it has asserted a default by the plaintiff in making payments, the defendant Alsco has not given any notice that it considers the entire agreement terminated. In fact, the statements in the Alsco affidavits to the effect that it is ready, able and willing to perform if only the plaintiff will pay up, are inconsistent with the idea of a complete termination. Whether the plaintiff is in default in making payments and whether the defendant Alsco has a right to terminate the entire agreement are matters on which I am not passing. My finding is that Alsco, on the record before me, has not in fact terminated the entire agreement and it follows that the plaintiff is still entitled to have its exclusive territory protected against invasion by Alsco.

Mr. Leo Green, Sales Manager of the Clifton Division of Alsco, Inc., states in his affidavit that "many" of the sales described in the plaintiff's papers "were sales to new home builders" which were made with the permission of the plaintiff; and Mr. Green relies upon a letter allegedly sent on February 17, 1958 by Ben Sugar, Vice President of Alsco, Inc., to the plaintiff. A copy of that letter is attached to Mr. Green's affidavit. It is subsequent to the distributorship agreement of February 5, 1958 and contains a statement that "* * * we are planning to operate in your area with

our Home Builders Division." Without more facts it is impossible to determine whether this letter and the subsequent conduct of the parties modified the plaintiff's right to insist upon enforcement of the agreement of February 5, 1958 according to its terms; there is no exception in that agreement for sales by Alsco to home builders. Did Alsco in fact follow up Mr. Sugar's letter by making direct sales to "legitimate home builders"? If so, did the plaintiff accept the implications of Mr. Sugar's letter expressly or by conduct? These questions cannot be answered from the present record. Mr. Green cites no acceptance of the letter, but merely makes, in paragraph 11 of his affidavit, an argumentative statement that since the distributorship agreement [¶ 8] gave the plaintiff the right to object to prohibited competition, "any right which they might have had with regard to the sales to the new home builders has been waived * * *."

I conclude that the proofs offered by Alsco to establish, on the basis of Mr. Sugar's letter of February 17, 1958, a modification or waiver of the admitted terms of the formal agreement of February 5, 1958 are insufficient. In addition, there is no claim by Alsco that *all* (emphasis added) of the alleged violations described in the affidavits of the plaintiff were sales to "new home builders."

With the written agreement for a sole and exclusive distributorship being undisputed and with there being convincing proof, for the purpose of this application, of violations by Alsco, Inc. through sales of its products labelled Alsco or sales of its products marketed under the name of its wholly-owned subsidiary Wisco, and with there being sufficient proof that irreparable damage to the plaintiff will flow from a continuance of similar violations in the future, the plaintiff is entitled to an interlocutory injunction. That injunction will prohibit, until this case can be tried and until the further order of the court, the defendant, Alsco, Inc., from selling directly or indirectly to any person, firm, corporation, other entity or group, in Bergen, Essex, Hudson,

Hunterdon, Mercer, Middlesex, Monmouth, Morris, Ocean, Passaic, Somerset, Sussex, Union and Warren Counties of New Jersey (except sales to the plaintiff), its baked enamel finish aluminum siding and accessories thereto, and its roofing products. The injunction will include a prohibition against sale of products labelled or otherwise designated by the trade names "Alsco" and "Wisco" as well as any other names Alsco, Inc. or any controlled subsidiary of Alsco, Inc., may now be using or may hereafter use.

As there is a controversy between the parties about the balance, if any, due from the plaintiff, and both plaintiff and Alsco, Inc. have indicated a willingness to handle current sales to the plaintiff on a cash-when-delivered basis, that basis will not be disturbed. In other words, the plaintiff will be required to pay in cash, at the prices provided for in the agreement of February 5, 1958, when it gets deliveries of materials from Alsco, Inc.

A supplemental affidavit was submitted on behalf of the plaintiff sometime after the argument and without obtaining leave for the purpose. That affidavit has not been considered in reaching a decision.

An order in accordance with this opinion may be submitted.